UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   3/17/2022
```

PARTI STARKS,

                              Plaintiff,

            -against-

METROPOLITAN TRANSPORTATION
AUTHORITY,

                              Defendant.

1:20-cv-09569 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO
DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Parti Starks brings this action against Defendant Metropolitan Transportation Authority (the "MTA") alleging claims for racial and gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983. (Amended Complaint ("Am. Compl.") [ECF No. 15]). Specifically, Plaintiff brings claims for Intentional Discrimination based on race and gender under Title VII, NYSHRL, and NYCHRL, (Am. Compl. Counts I, III, V, VII, IX, and XI) and Disparate Impact Discrimination based on race and gender under Title VII, NYSHRL, and NYCHRL, (Am. Compl. Counts II, IV, VI, VIII, X, and XII). Plaintiff also asserts section 1981 and section 1983 claims premised on the same allegedly discriminatory conduct. (Am. Compl. Counts XIII and XIV).

Defendant has moved to dismiss Plaintiff's Amended Complaint. [ECF No. 23]. In support of its motion, Defendant filed a memorandum of law, (Def. Br. [ECF No. 24]), and the Declaration of Brian I. Confino, counsel to the MTA, with several exhibits attached, (Confino Decl. [ECF No. 25]). In opposition to Defendant's motion, Plaintiff filed a memorandum of law.

(Pl. Opp'n [ECF No. 28]).[1]  Defendant filed a reply (Def. Reply [ECF No. 29]), with a

supplemental Declaration of Brian I. Confino (Confino Reply Decl. [ECF No. 30]).  For the

following reasons, Defendant's Motion to Dismiss is granted.

## BACKGROUND[2]

### I.    The Parties

Plaintiff is an African-American female who was employed by the MTA as a Police

Officer for approximately 19 years.  (Am. Comp. ¶ 1).  The MTA "was and still is in the

business of providing interstate public transportation services by rail."  (Am. Comp. ¶ 12).

Defendant also maintains and operates a Police Department (the "MTAPD") and employs Police

Officers, including those with the rank of Sergeant and above.  (Am. Comp. ¶ 12).

### II.    The MTAPD Promotion Policies

According to the Amended Complaint, a Police Officer employed by the MTAPD "must

have a minimum of three years of service within the MTAPD to be eligible to be promoted to

Sergeant."  (Am. Comp. ¶ 27).  The only way to be promoted to Sergeant is to take a written,

multiple-choice, promotional examination and score high enough to be placed on the

Promotional List.  (Am. Comp. ¶ 28).  The MTAPD makes promotions to Sergeant off the

Promotional List by issuing personnel orders, which are distributed to the entire department and

remain in effect until a new promotional list is established.  (Am. Comp. ¶¶ 28–29).  The list

ranks candidates solely and strictly in order of the score they received on the written

examination.  (Am. Comp. ¶ 30).  According to the Amended Complaint, the MTAPD has

---

[1] In her opposition, Plaintiff concedes that she cannot challenge Defendant's Motion to Dismiss with respect to her claim under section 1981.  (Pl. Opp'n 2 n.1).  The Section 1981 claim is therefore dismissed.

[2] Unless otherwise noted, the facts are taken from the Amended Complaint, and are accepted as true for the purposes of this motion.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, this Court need not "accept as true all of the [legal conclusions] contained in a complaint."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

discretion on when to give a promotional exam and may keep a Promotional List in effect until it is exhausted." (Am. Comp. ¶¶ 31–32).

### III.    The 2014 Promotional Examination And List

Plaintiff, a Police Officer at the time, took the Sergeant promotional examination in 2014. (Am. Comp. ¶ 34). Subsequently, the MTA issued Personnel Order 14-75, which listed the results from the 2014 exam (the "2014 List"). (Am. Comp. ¶ 35; Confino Decl. ¶ 2, Ex. 1 ("Personnel Order #14-75")). The 2014 List was entitled "Sergeant Promotional Ranking," and stated that it was "effective immediately" and "shall remain in effect until the Department publishes a new Sergeant Promotional List." (Personnel Order #14-75). The 2014 List ranked the 105 highest scoring applicants from the 2014 examination, in order of their score, who were eligible for promotion. (Am. Comp. ¶ 36; Personnel Order #14-75). The 2014 List displayed each applicant's rank, name, employee number, and test score. (Personnel Order #14-75). Plaintiff was ranked number 72 on the list. (Am. Comp. ¶ 36; Personnel Order #14-75).

From October 17, 2014 to December 24, 2017, the MTAPD promoted eligible officers from the 2014 List through the officer ranked 62nd, with the exception of three applicants who had retired. (Am. Compl. ¶¶ 35, 38, 39).

### IV.    The 2018 Promotional Examination And List

In February 2018 a new written sergeant promotional exam was given. (Am. Compl. ¶¶ 44, 46). Plaintiff did not take the 2018 promotional exam. (Am. Compl. ¶ 46).

On June 4, 2018, the resulting rankings from the 2018 exam were issued (the "2018 List"). (Am. Compl. ¶ 44; Confino Decl. ¶ 3, Ex. 2 ("Personnel Order #18-71")). The 2018 List was entitled "Sergeants Promotional Exam Results," was listed as effective "Immediately," and stated that it contained "the results of the Sergeants promotional examination." (Personnel Order

#18-71).  The 2018 List ranked the 167 highest scoring applicants from the 2018 examination, in order of their score, who were eligible for promotion.  (Personnel Order #18-71).  As with the 2014 List, the 2018 List displayed each applicant's rank, name, employee number, and test score.  (Personnel Order #18-71).  Plaintiff did not take the 2018 exam and therefore was not listed on the 2018 List.  (Am. Compl. ¶ 46; Personnel Order #18-71).

From June 4, 2018 to the filing of the initial Complaint on November 13, 2020, the MTAPD had promoted 46 officers on the 2018 List.  (Am. Compl. ¶¶ 49–52).

## V.    Plaintiff's Allegations Of Discrimination

Plaintiff alleges that the MTAPD stopped promoting officers listed on the 2014 List after December 24, 2017, and administered another exam, in order to avoid promoting more African-American and female officers.  (Am. Compl. ¶ 45).  She alleges that there were disproportionately fewer African-Americans and females in the top half of the 2014 List as compared to the bottom half.  (Am. Compl. ¶ 37).  Indeed, Plaintiff alleges that the last officer promoted off the 2014 List — ranked 62nd on that list—immediately preceded several African American officers and, specifically, three African-American female officers.  (Am. Compl. ¶ 39).  She alleges that the MTAPD had several vacancies and the need to promote officers to Sergeant between December 24, 2017 and June 4, 2018, but did not promote from the 2014 List to meet these needs to "to avoid promoting African-American officers and/or African-American female officers, including Plaintiff, from the [2014] List."  (Am. Compl. ¶ 40).

Plaintiff alleges that from June 4, 2018 to the filing of the initial Complaint, the MTAPD made four rounds of promotions from the 2018 List.  (Am. Compl. ¶¶ 49–53).  Of those promotions, Plaintiff alleges that only one African-American officer was promoted and only three female officers were promoted.  (Am. Compl. ¶¶ 49–53).  Plaintiff alleges that no African-

American female officers from the 2018 List had been promoted as of the date of the filing of the initial Complaint.  (Am. Compl. ¶¶ 49–53).

## VI.   Procedural History

On April 16, 2019, Plaintiff filed a written Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), claiming Defendant discriminated against Plaintiff on account of her race and gender by not promoting her to Sergeant.  (Am. Comp. ¶ 16). After the Charge of Discrimination was transferred to the New York State Division of Human Rights ("NYSDHR"), NYSDHR determined there was "no probable cause and advised Plaintiff of her right to request review by the EEOC within 15 days of receipt of the determination." (Am. Comp. ¶¶ 17–18).  The EEOC subsequently issued Plaintiff a Notice of Right to Sue and advised Plaintiff of her right to file an action against Defendant in federal court within 90 days. (Am. Comp. ¶ 20).

Plaintiff commenced the current action within 90 days of her receipt of the Notice (Am. Comp. ¶ 21), by filing the Complaint, [ECF No. 1].  After Defendant filed a pre-motion letter in anticipation of filing a Motion to Dismiss, [ECF No. 9], Plaintiff, with leave of the Court, filed the Amended Complaint, (*see* Am. Compl.).  Shortly thereafter, Defendant moved to dismiss the Amended Complaint.  [ECF No. 23].

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations omitted).

In ruling on a motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). The Court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). For documents to be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents.'" *Jones-Cruz v. Rivera*, No. 19 CIV. 6910 (PGG), 2021 WL 965036, at *3 (S.D.N.Y. Mar. 14, 2021) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).

## DISCUSSION

I. **Plaintiff Cannot Maintain A Title VII Lawsuit Against The MTA Because She Did Not Timely File A Charge For Discrimination With The EEOC**

A. **Plaintiff Failed To File Her EEOC Charge Within 300 Days Of the Alleged Discriminatory Act**

Plaintiff cannot maintain a Title VII lawsuit against the MTA because she did not timely file a charge for discrimination with the EEOC. Title VII requires that individuals aggrieved by acts of discrimination file a timely charge with the EEOC. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015). Although typically individuals aggrieved by acts of discrimination must file a charge with the EEOC within 180 dates, in states like New York that

6

have local administrative mechanisms for pursuing discrimination claims, the charge must be filed with the EEOC within 300 days of the allegedly discriminatory act. *Id.*; *see also* 42 U.S.C. § 2000e–5(e)(1). A Title VII claim is time barred if the claim is filed even one day late. *See, e.g., Miller v. Int'l Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir. 1985) (holding that plaintiff's action was time barred since the "EEOC filing occurred 301 days after" the date of the alleged discrimination).

Acts such as "termination, failure to promote, denial of transfer, [and] refusal to hire," are discrete acts, and thus are independently subject to a 300-day time limitation. *Boyer v. Syosset Cent. Sch. Dist.*, No. 07-CV-3520JFBETB, 2008 WL 1766603, at *4 (E.D.N.Y. Apr. 14, 2008) (Bianco, J.) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112–14 (2002)). Where an employer makes hiring decisions from a promotional list, the Second Circuit has held that an alleged discriminatory act accrues for purposes of the 300-day time limitation when the plaintiff "knew or should have known" that she was passed over for promotion. *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Boyer*, 2008 WL 1766603, at *4.

According to the Amended Complaint, Plaintiff filed a charge with the EEOC on April 16, 2019. (Am. Comp. ¶ 16). The parties dispute the date that Ms. Starks knew or had reason to know of the alleged discriminatory act. Defendant argues that Plaintiff knew or should have known she was no longer eligible for promotion on the day the 2018 List was issued — June 4, 2018 — which was more than 300 days before the date Plaintiff filed her claim with the EEOC on April 16, 2019 (316 days later). (*See* Def. Br. 7; Am. Compl. ¶ 44). Plaintiff contends that, because of the differences in the language used in the 2018 List and 2014 List, Plaintiff did not have reason to know that she was no longer eligible for promotion until October 12, 2018, when the MTAPD began its first round of promotions from the 2018 List, a date which is within 300

days of the date Plaintiff filed her claim with the EEOC on April 16, 2019 (186 days before).
(*See* Pl. Opp'n 7–8; Am. Compl. ¶ 49).

The only reasonable inference is that Ms. Starks should have known that she was no
longer eligible for promotion on June 4, 2018, the date the 2018 List was published.  Ms. Starks
knew that the only way to be promoted to Sergeant was to take a promotional exam and that the
MTAPD makes promotions to Sergeant off the Promotional List by issuing personnel orders.
(Am. Comp. ¶¶ 28–29).  Her own allegations make clear that she was also aware that each
Promotional List was effective until a new promotional list was established.  (Am. Comp. ¶¶ 28–
29).  Ms. Starks took the 2014 promotional exam, (Am. Comp. ¶ 34), but did not take the 2018
promotional exam, (Am. Compl. ¶¶ 44, 46).  She was also aware that the 2018 List was
published with the results from the 2018 promotional exam.  (Am. Compl. ¶ 44).  As such, she
should have known on June 4, 2018, the date the 2018 List was published, that she was no longer
eligible for promotion.

Plaintiff asserts that she could not have known that the 2018 List superseded the 2014
List when it was initially promulgated because the 2018 List used the words "Exam Results"
instead of "Ranking."  (Pl. Opp'n 5–6).  In support of her argument, she cites to other Promotion
Lists that the MTAPD has used in the past, which were all titled "Sergeant Promotional
Ranking," as opposed to "Sergeants Promotional Exam Results."  (Pl. Opp'n 6).

Plaintiff nonetheless should have known on June 4, 2018, the date the 2018 List was
published, that she was no longer eligible to be promoted.  The 2014 List and 2018 are virtually
identical.  (*Compare* Personnel Order #14-75 *with* Personnel Order #18-71).  Both lists itemize
the results of the promotional exam given that same year and list the same information about
each promotional applicant in the order of their exam scores.  Both lists also have nearly

identical headers and, importantly, each has an effective date of "Immediately."  The only differences between the two lists are: (1) the 2014 List is entitled "Sergeant Promotional Ranking" while the 2018 List is entitled "Sergeant Promotional Exam Results;" and (2) the 2014 has an explanatory paragraph on the first page of the list, which states that "[t]he following Sergeant Promotional List will become effective immediately . . . [and] shall remain in effect until the Department publishes a new Sergeant Promotional List," whereas the 2018 List merely states that it contains the "results of the Sergeants promotional examination."  (*Compare* Personnel Order #14-75 *with* Personnel Order #18-71).  Notwithstanding these differences, the two lists are virtually identical.  Moreover, Plaintiff provides no explanation for why the MTAPD would have listed the results of the 2018 exam in a personnel order if not to designate a new effective list for promotions.  As such, Ms. Starks had reason to know that she was no longer eligible for promotion on June 4, 2018, more than 300 days before the date she filed her claim with the EEOC.  Her EEOC claim was therefore untimely, which bars her from litigating a Title VII claim premised on the same underlying conduct here.

### B.  A Continuing Violation Exception Does Not Apply

Plaintiff attempts to circumvent the time-bar on her claim by raising a "continuing violation theory."  (Pl. Opp'n 13).  Under the continuing violation doctrine, "'[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last violation.'" *Massaro v. Bd. of Educ. of City Sch. Dist.*, No. 17 Civ. 8191 (LGS), 2021 WL 184364, at *3 (S.D.N.Y. Jan. 19, 2021) (quoting *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018)); *Williams v. New York City Dep't of Educ.*, No. 1:19-CV-01353 (MKV), 2021 WL 1178118, at *5 (S.D.N.Y. Mar. 29, 2021) ("[T]o be able to consider out-of-time actions along with timely

ones, the plaintiff must illustrate that the actions taken against her constituting the allegedly [unlawful activity] are related and part of a single pattern or practice, and not 'discrete' actions." (citation omitted)).  To qualify as continuing, the claimed actions must not be discrete acts, but repeated conduct that occurs over a series of days or perhaps years.  *Francois v. New York City Dep't of Educ.*, No. 19 CIV. 11119 (ER), 2021 WL 603226, at *4 (S.D.N.Y. Feb. 16, 2021), *aff'd*, No. 21-601, 2021 WL 4944458 (2d Cir. Oct. 25, 2021).

As a preliminary matter, Plaintiff did not assert a continuing violation in her EEOC filing, which precludes her from raising it now to circumvent the time-bar.  A plaintiff may not rely on a continuing violation theory of timeliness "unless she has asserted that theory in the administrative proceedings."  *Fitzgerald v. Henderson*, 251 F.3d 345, 360 (2d Cir. 2001); *Kleinman v. Fashion Inst. of Tech.*, No. 16 CIV. 4348 (KPF), 2017 WL 3016940, at *8 (S.D.N.Y. July 14, 2017); *Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ.*, No. 03 Civ. 5942 (PKC), 2004 WL 736988, at *13 (S.D.N.Y. Apr. 6, 2004) (holding that a plaintiff cannot raise a continuing violation theory in order to extend the limitations period for filing an EEOC charge unless she "clearly asserted [a continuing violation] both in the EEOC filing and in the complaint" (quoting *Miller*, 755 F.2d at 25)).  Plaintiff's EEOC Charge does not assert a continuing violation theory.  (*See* Confino Reply Decl. ¶ 2, Ex. 1 ("EEOC Charge of Discrimination")).  In fact, Plaintiff did not even check the box indicating "Continuing Action" in the EEOC Charge.  (*See* EEOC Charge of Discrimination).  As such, Plaintiff cannot raise this argument now to save her Title VII claim.  *See Atkinson v. Singh*, No. 19-CV-3779 (VSB), 2022 WL 137634, at *7 (S.D.N.Y. Jan. 14, 2022) (plaintiffs cannot assert a "continuing violation theory," where they did not assert such a theory in the underlying administrative proceedings and left the "Continuing Action" box unchecked in their EEOC filings).

Nonetheless, even if Plaintiff had raised a "continuing violation theory" in her EEOC Complaint, such a theory is not applicable here, where the alleged violation of Title VII arises from a discrete discriminatory act.  In *Morgan*, the Supreme Court explained that "discrete discriminatory acts," such as a failure to promote an employee, "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  536 U.S. at 113–14, 122. Moreover, even before the Supreme Court pronouncement in *Morgan*, the Second Circuit had held in *Harris* that a plaintiff who was not hired from a promotional list before it expired could not assert a "continuing violation" exception because the alleged violation ended when that promotional list expired.  186 F.3d at 248.  As such, Plaintiff cannot assert a "continuing violation theory" based upon her claim that the MTAPD unlawfully failed to promote her when it began using the new promotion list in 2018.

Plaintiff argues that the circumstance underlying her "continuing violation theory" is not the discrete act of failing to promote her, but is instead the continuing policy of ranking applicants solely by their exam score, which she asserts disadvantages African-American and female police officers.  (Pl. Opp'n 10–11).  Plaintiff's argument is at odds with clear Second Circuit and Supreme Court authority specifically holding that a failure to promote is a discrete discriminatory act that is not actionable even if related to acts alleged in a timely filed charge. *See Morgan*, 536 U.S. at 113–14, 122; *Harris*, 186 F.3d at 248.

Plaintiff filed her EEOC charge more than 300 days after her purported discrimination claim accrued.  She therefore failed to file a timely charge with the EEOC, which renders her claims time barred.  As a result, all of her Title VII claims are dismissed.

II.     **Plaintiff Fails To State A Claim Under Section 1983**

The Amended Complaint fails to assert a Section 1983 claim cognizable under either the Fifth or Fourteenth Amendments.  Section 1983 allows an individual to bring suit against persons who, acting under color of state law, have caused [her] to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws of the United States."  42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  Public benefit corporations, such as the MTA, are municipal entities for the purpose of Section 1983.  *Byrd v. Metro. Transit Auth.*, No. 15-CV-1364 JG RLM, 2015 WL 4546718, at *2 (E.D.N.Y. July 28, 2015); *Rivera v. Metropolitan Transit Authority*, 750 F. Supp. 2d 456, 463 (S.D.N.Y. 2010).  To allege a claim for relief under Section 1983 against a municipal defendant, such as the MTA, a plaintiff must allege that a policy, custom or practice caused the deprivation of the plaintiffs' constitutional rights.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *see also Torcivia v. Suffolk Cty., New York*, 17 F.4th 342, 354 (2d Cir. 2021).  The Court evaluates Plaintiff's claim under the Fifth and Fourteenth Amendments respectively.

### A.  Plaintiff Cannot Bring A Fifth Amendment Claim Against The MTA Because It Is A State Actor

Plaintiff cannot allege a section 1983 claim against the MTA premised on the Fifth Amendment, which only "governs the conduct of the federal government and federal employees, and does not regulate the activities or state officials or state actors."  *Manbeck v. Katonah-Lewisboro School Dist.*, 435 F. Supp. 2d 273, 276 (S.D.N.Y. 2006).  Plaintiff's own Amended

Complaint alleges that the MTA is a *state* agency.  (Am. Compl. ¶ 11).  As such, Plaintiff cannot state a section 1983 claim against the MTA premised on a violation of the Fifth Amendment.

### B.  The Amended Complaint Does Not Allege A Constitutional Violation Under The Fourteenth Amendment

The Amended Complaint does not sufficiently allege a constitutional violation under the Fourteenth Amendment.  As a preliminary matter, it is unclear from the pleadings and Plaintiff's opposition whether Plaintiff intends merely to assert a claim that the MTAPD's promotion policy results in a "disparate impact," or whether Plaintiff intends to assert that the MTAPD intentionally discriminated against Plaintiff and that the MTAPD's promotion practices demonstrate discriminatory intent to support such a claim.  (*See* Pl. Opp'n 14; Am. Compl. ¶¶ 129–130).  Regardless, it is well settled that "equal protection claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy."  *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012).  Plaintiff's Amended Complaint alleges that the MTAPD's promotion practice was based on a facially neutral policy of promoting officers off a list "solely and strictly in order of the score they received on the written examination."  (Am. Compl. ¶¶ 29–30).  As such, Plaintiff cannot allege a claim premised on disparate impact alone.  The Court therefore construes Plaintiff's allegations as asserting an intentional discrimination claim.

However, Plaintiff does not allege sufficient facts to support an inference that the MTAPD intentionally discriminated against her.  Plaintiff merely pleads conclusory allegations that the MTAPD engaged in actions with the intent to discriminate against African-American and female officers.  (Am. Compl. ¶¶ 26, 40, 45, 55).  Such allegations are insufficient to state a claim under section 1983.  *See, e.g., Thomas v. City of New York*, 143 F.3d 31, 37 (2d Cir. 1998) (affirming dismissal of an Equal Protection Clause claim when "plaintiffs did not allege sufficient facts to support discriminatory intent"); *Morales v. New York*, 22 F. Supp. 3d 256, 275

13

(S.D.N.Y. 2014) ("Plaintiff's conclusory allegations of disparate treatment and his personal opinion that such treatment was motivated by discriminatory intent are not enough to prevail on a § 1983 claim for a violation of the Equal Protection Clause.").

Plaintiff appears to urge that an inference of intent to discriminate can be drawn from the fact that the promotional exam results in a promotional list that ranks African-American and female officers disproportionately lower on the list and that the MTAPD purposefully scheduled a new promotional exam to avoid promoting applicants from the lower half of that list. (Pl. Opp'n 14). In support of this argument, Plaintiff points to the allegations in her complaint detailing the proportion of African-American and female applicants who scored in the bottom half of the 2014 List, and were therefore not promoted before the MTAPD administered another exam in 2018. (Am. Compl. ¶¶ 37–39). She also alleges facts detailing the percentage of African-American Sergeants currently employed at the MTAPD. (Am. Compl. ¶ 57).

However, Plaintiff cannot plead discriminatory intent based on statistics alone. The Second Circuit has specifically stated that "statistics alone are not sufficient to allege discriminatory intent in . . . Equal Protection cases brought by an individual only on her own behalf. *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 70 n.5 (2d Cir. 2015). Plaintiff brings her claim solely on her own behalf, (Am. Compl. ¶ 1), and, as such, cannot allege an equal protection violation based on statistics alone.

Nonetheless, even if Plaintiff had asserted a putative class action, her allegations premised on promotion statistics would still be insufficient. The Second Circuit has held that "to show discriminatory intent in a . . . Equal Protection case based on statistics alone, the statistics must not only be statistically significant in the mathematical sense, but they must also be of a level that makes other plausible non-discriminatory explanations very unlikely." *Burgis*, 798

14

F.3d at 69.  The Amended Complaint merely pleads the statistical make-up of *one* promotional list — the 2014 List.  (Am. Compl. ¶ 37).  Such threadbare allegations are wholly insufficient to allege that the MTAPD acted with an intent to discriminate when it decided to administer a new exam and promulgate a new promotional list.  Plaintiff's separate allegation that the MTAPD has only six African-American Sergeants in the MTAPD, out of ninety-six Sergeants total (Am. Compl. ¶ 57), is also insufficient to allege discriminatory intent.  This allegation includes no detail of the "qualifications of individuals in the applicant pool and of those hired for each position, or the number of openings at each level."  *Burgis*, 798 F.3d at 70.  Conversely, according to Plaintiff's own allegations in the Amended Complaint, the sole objective criteria that the MTAPD considers in promoting officers to Sergeant is their score on the written Promotional exam.  (Am. Compl. ¶¶ 29–30).

As such, the Amended Complaint fails to plead sufficient facts from which to draw a reasonable inference that the MTAPD violated Plaintiff's constitutional rights when it administered a new promotional exam in 2018.  Plaintiff's section 1983 claim must therefore be dismissed.

### III.   The Court Declines To *Sua Sponte* Grant Plaintiff Leave To Amend

The Court declines to *sua sponte* grant Plaintiff leave to amend.  Leave to amend the complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nonetheless, free leave need not be given should further amendment prove futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, Plaintiff neither requests leave to amend (for a second time) nor does she give any indication that she is in possession of facts that would cure the problems identified in this opinion, which she presumably would be if there were such facts.  *See Ritchie Cap. Mgmt.,*

*L.L.C. v. Gen. Elec. Cap. Corp.*, 821 F.3d 349, 351 (2d Cir. 2016) (per curiam) (holding that it was not an abuse of discretion to deny plaintiffs an opportunity to amend their complaint where plaintiffs "did not ask the district court for leave to amend"); *see also Turban v. Bar Giacosa Corp.*, No. 19-CV-1138 (JMF), 2019 WL 3495947, at *5 (S.D.N.Y. Aug. 1, 2019) (declining to *sua sponte* grant leave to amend counterclaims where Defendant did not request leave to amend and did not give "any indication that [they are] in possession of facts that would cure the problems identified in this opinion"). Moreover, Plaintiff has already had one chance to amend her complaint to address Defendant's arguments for dismissal as detailed in its pre-motion letter in anticipation of filing a Motion to Dismiss [ECF No. 9] and has still failed to state a claim upon which relief can be granted. Accordingly, leave to amend is denied.

### IV.    The Court Declines To Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims

Having dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over any remaining state-law claims. 28 U.S.C. § 1367(c).

### CONCLUSION

Plaintiff cannot maintain a Title VII lawsuit against the MTA because her underlying EEOC charge was not timely filed. She also alleges insufficient facts to plausibly support a claim that the MTA acted with a discriminatory intent when it failed to promote her to Sergeant. As such, for the foregoing reasons, Defendant's Motion to Dismiss is GRANTED and Plaintiffs' Amended Complaint is DISMISSED with prejudice and leave to amend is DENIED.

The clerk of court is respectfully requested to terminate docket entry 23 and to close this case.

**SO ORDERED.**

Date:   **March 17, 2022**
          **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**